Burr M. Stark and Margie M. Stark, Husband and Wife v. Commissioner.
Stark v. Commissioner
Docket No. 109197.
United States Tax Court
1943 Tax Ct. Memo LEXIS 278; 2 T.C.M. (CCH) 197; T.C.M. (RIA) 43261; May 31, 1943
*278 Homer E. Peters, Esq., for the petitioners. Ellyne E. Strickland, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax for the fiscal year ended December 31, 1938, in the amount of $3,784.12. The deficiency is contested in part only. The only question is whether the sum of $41,736.01, representing the principal amount of a judgment awarded and paid by the State of New York in 1938, pursuant to a decision dated May 2, 1938, by the Court of Claims of the State of New York, constitutes taxable income to petitioners in 1938. The findings of fact are based upon a stipulation of certain facts and upon documentary evidence accompanying the stipulation of facts. No oral testimony was offered. Findings of Fact Petitioners are husband and wife, residing at Troy, New York. They filed a joint income tax return for the year 1938 with the collector for the 14th district of New York. Petitioner, Margie M. Stark, had no income or deductions for the taxable year 1938. As the issue relates solely to the income of Burr M. Stark he is referred to hereinafter as petitioner. Petitioner is an engineer and contractor. *279 At all times hereinafter mentioned, and particularly from January 1, 1933, to December 31, 1938, petitioner kept his books and made his returns on the accrual basis. On September 15, 1932, petitioner entered into a contract with the State of New York, acting through the Department of Public Works for the reconstruction, with Federal aid, of a portion of the Plattsburg-Ausable Chasm, Part 2, S.H. No. 5311, Bridge No. 2, under the terms of E.R.C. 3389, and a portion of the Kesseville-Ausable Chasm, S.H. No. 5056, Clinton County, under the terms of E.R.C. 2282, and for constructing the Ausable Chasm-Port Kent, Part 1, C.H. No. E. 1946, Essex County. The contract provided for completion of bridge No. 2, which portion of the entire work was being constructed with Federal aid, as an emergency relief project, by July 1, 1933, and the completion of the balance of said contract on or before November 1, 1933. Petitioner agreed to perform the contract for the sum of $170,598.30, based upon unit work prices. Payment was to be made by the State under a monthly estimate of the work done and material furnished, not exceeding 90 percent of the value of the work done. The State retained 10 percent *280 of the contract price until the entire work had been completed and accepted. Petitioner began work under the contract on September 19, 1932, and continued the work to June 1934. It was duly accepted by the State of New York on June 7, 1934. The final estimate was paid to petitioner on August 4, 1934, which was accepted by petitioner under protest. During the period of performance of this contract and to and including December 1933, petitioner, over his protest, furnished some materials which he alleged to be superior to those specified in the contract and performed certain work which he claimed was not required by the contract. The State of New York did not at any time admit that such materials or work were furnished or performed by petitioner in excess of the contract requirements. Paragraph 4 of the contract between petitioner and the State of New York read in part as follows: * * * The State, however, reserves the right to make such additions, deductions or changes as it deems necessary, making an allowance or deduction therefor at the prices named in the proposal for this work, and this contract shall in no way be invalidated thereby; and no claim shall be made by the Contractor *281 for any loss of anticipated profits because of any such change, or by reason of any variation between the approximate quantities and the quantities of the work as done. It is further agreed that any extra work performed or extra material furnished shall be covered by a supplemental contract as provided in chapter 30 of the Laws of 1909 and the amendments thereto, and that no claim will be made by the Contractor for any such items performed or furnished before such supplemental contract shall have been approved by the Comptroller of the State of New York and executed by the Commissioner of Highways as provided by chapter 342 of the $ Laws of 1913 and amendment thereto. $ No supplemental contract was made between the parties, and and the State of New York refused to make the extra payments as demanded by petitioner. He thereupon, in December 1934, instituted a proceeding against the State of New York in the Court of Claims of the State of New York, wherein he alleged: "That during the performance of said contract the State of New York, in breach of said contract, arbitrarily and wrongfully, over claimant's protest, caused claimant to suffer the damages hereafter set forth by acts, *282 omissions and wrongful requirements." Petitioner demanded an award and judgment against the State of New York for the sum of $94,904.94, with interest. The amount of $94,904.94 included the sum of $65,000 accrued by petitioner on his 1933 income tax return as the amount he estimated he would receive from the State for its breach of the contract. This claim was contested by the State of New York in the Court of Claims. The State of New York, through its Attorney General, appeared and submitted proofs and argument against the validity of petitioner's claim. In the notice of claim filed by petitioner on December 3, 1934, he alleged that the claim was duly filed within six months after the same accrued. The trial of the claim was heard on April 13, 14, 15, and 16, 1936, and May 26, and 27, 1936. On May 2, 1938, the Court of Claims of the State of New York decided that petitioner was entitled to an award against the State for damages and excess costs in the sum of $41,736.01, and interest from August 4, 1934. On May 4, 1938, judgment was entered for petitioner in the principal sum of $41,736.01, plus interest of $9,390.60. In its findings of fact supporting the conclusion of law that *283 the claimant (petitioner herein) was entitled to an award against the State of New York, the Court of Claims found that the claimant was required by the State to furnish and construct a large quantity of granite masonry in a manner not required under the contract, and to furnish and erect sandstone, and to do other incidental work, in a manner different from that provided for under the contract. The court also found that the contract was not completed until June 1934, and that the State acted within its rights in requiring performance of work done by the claimant from December 1933 to June 1934. The award was for damages suffered by the claimant in doing the extra work required by the State, based upon the cost to him of such work, with 5 percent overhead, and 10 percent profit allowed on certain items. In his income tax return for the year 1938, petitioner included the amount of $9,390.60 which was paid to him as interest on his award against the State of New York, but did not report the amount of $41,636.01, which was the principal sum of the award. Respondent included this sum as income in petitioner's 1938 return, and determined a deficiency of $3,784.12. In his income tax return *284 for the year 1933, petitioner included in gross income the amount shown to be due him on the estimates from the State, plus the retained percentage withheld until the completion of the contract, and deducted therefrom the cost and expenses incurred and accrued during that year in connection with the performance of the contract, and in addition thereto, petitioner reported as income the sum of $65,000, which he estimated he would recover from the State of New York on account of the materials furnished and the work performed during 1933 which he claimed to be in excess of the requirements of the contract. Petitioner's 1933 return showed gross receipts from business in the sum of $235,133.24, a net business loss of $588.87, and a total net loss of $107.27. This return was accepted as filed. The sum of $41,736.01 received by petitioner from the State of New York in 1938 accrued to petitioner in that year. No income accrued to petitioner in 1933 for extra work performed for the State of New York in that year because no liability in petitioner's favor was fixed in 1933. Opinion The only question is whether the principal sum of $41,736.01, received by petitioner in 1938 pursuant to the *285 judgment of the Court of Claims of the State of New York, dated May 4, 1938, should be included in petitioner's income for the year 1938. Respondent included the above amount in petitioner's income for the year 1938, relying, in part, upon Art. 42-1 of Regulation 101. [1] Petitioner contests the respondent's determination upon the ground that the income in question accrued to him during the year 1933 and that he properly accrued the above amount, at least, during the year 1933, both on his books and in his income tax return for that year. The questions involved in this issue are easily answered under the rules of many leading cases and under well established principles of income tax law. The question must be decided against petitioner. The facts in this proceeding are such that petitioner's strained efforts to take this case outside of established rules *286 of tax law and outside of the rules of leading cases are difficult to understand. Careful consideration has been given to every contention which petitioner has made. A brief answer will be given to each of petitioner's main arguments. It will be necessary to repeat some of the facts by way of answering some of petitioner's arguments. Petitioner entered into a contract with the State of New York in 1932, under which he was to perform certain construction work for a stated consideration. The issue in this proceeding relates only to the work performed during the year 1933. As work under the contract progressed, the State's engineer and/or other State officials or employees rejected certain materials which petitioner proposed using and made certain requirements. It appears that under the contract with the State certain matters had to be approved by the State engineer. As a result of the various requirements exacted by the State engineer and others, with which petitioner complied, petitioner found that his costs were greater than the agreed contract price for the entire work. He regarded the situation as one under which he had performed extra work and provided extra material. He accepted *287 final payment under the contract under protest. The contract was to be completed, originally, on November 1, 1933. The work was not completed on that date, but continued until June 1934. The work was accepted as completed, by the State, on June 7, 1934, and final payment was made to petitioner on August 4, 1934. During the year 1933 petitioner furnished some materials and performed certain work, under protest, alleging that such was not required by the contract. The State of New York did not, at any time, admit that materials furnished or work performed were in excess of the contract requirements. The facts are not clear upon the point, but we are willing to assume that petitioner made demands during the year 1933, as well as during the year 1934, upon the State of New York. Insofar as petitioner has informed us, his plight was something as follows: Under the contract it was agreed that petitioner would make no claim for extra work or extra material unless a supplemental contract covering such was approved by the contractor of the State and executed by the commissioner of highways. No supplemental contract of this nature was entered into by the parties. Petitioner contends that other *288 considerations made it exceedingly doubtful whether a supplemental contract could have been obtained. Under such situation, petitioner was in a position of having to complete his work under a contract and then, later, make claim against the State of New York to recover "damages" for a breach of contract by the State. See ; ; and . His remedy was controlled by New York statute. He was dealing with a sovereign state. His remedy was to file claim against the State in the Court of Claims of the State of New York. In December 1934 petitioner instituted a proceeding against the State by filing a claim against the State in the Court of Claims. Petitioner alleged in his claim before the court that his claim was filed within six months after the same had accrued. From this we understand that the claim accrued at or about the time that all of the work was completed under the contract. Prior to the filing of the claim, the State of New York had denied petitioner's demand for additional *289 reimbursement for material and labor and, as a matter of law, the Claim filed in the Court of Claims was denied by the State of New York. There was no determination rendered by the Court of Claims until May 1938. There is nothing unusual in the facts in this case. Petitioner makes some argument to the effect that the Court of Claims of the State of New York is not a court, but is a mere auditing agency for the State. This argument is made by petitioner in an effort to prove that the performance of the work and the furnishing of the materials by him in 1933 determined a liability in 1933 in the State of New York to make extra payments, and that the only uncertainty was the determination of the exact amount to be paid. Without extended research on the point, it is clear that the Court of Claims is a court of record in New York; it is a statutory court with limited jurisdiction. It has a constitutional existence by virtue of a provision in the constitution of the State of New York which prohibits the legislature from auditing or allowing any private claim or act against the State. The Court of Claims was created to hear and determine private claims against the State of New York. McKinney's *290 Consolidated Laws of New York, Annotated, Judiciary Law, Book 29, p. 19, article 2, section 2, note 8. Upon all of the evidence, it is concluded that in the year 1933 petitioner's claim for additional payment from the State of New York, over and above the contract price, was too uncertain to make the accrual of any amount possible, in anticipation of a future recovery from the State of New York for materials furnished and labor performed in 1933 under the particular contract. In 1933 and 1934 all that petitioner had was a wholly disputed claim against the State of New York. It was entirely possible that the court having jurisdiction might hold that no additional materials had been furnished and no additional work had been performed during the year 1933 under the court's interpretation of the underlying contract. It is our opinion that petitioner's claim in 1933 was too contingent to admit of treatment as an accrued asset in the year 1933. See ; and , where it was pointed out that "accrual will not serve to *291 accelerate a claim which is inherently too contingent to be counted." Petitioner erred on his books and in his return for the year 1933 the amount of $65,000, which he then estimated would be the amount which he would collect from the State of New York and materials in excess of his obligations under the contract. When a claim is open to contest, both as to the liability of the obligor and the amount, it is not accruable. The fact that a taxpayer keeps its books on an accrual basis and accrues as income amounts which are contested is not conclusive. It was too uncertain during the year 1933 that petitioner would receive anything at all from the State of New York on his claims, to make any accrual of income possible during the year 1933. . Many leading cases could be cited to point out to petitioner the well settled rule that income does not accrue to taxpayer until a liability in his favor has become fixed. See however, ; ; *292 ; ; Also, it is a rule that items are not accruable if there is a genuine contingency as to legal liability. Law of Federal Income Taxation, Paul and Mertans, Vol. 1, par. 11.73, p. 558. The year in which income accrues is the year in which the liability to pay is no longer contested, but has become definitely fixed and certain. . The liability of the State of New York to pay additional sums to petitioner became fixed and certain in the year 1938, and not before. In that year, the taxable year, income accrued to petitioner in the amount of $41,736.01, the principal amount of the award of the Court of Claims which was entered on May 4, 1938. The next argument of petitioner is that the principal amount of $41,736.01 was only *293 a reimbursement to him for out-of-pocket expenses for materials and labor, so that it in no way constituted income to him, at any time. Petitioner argues that even if the above amount had been accruable in 1933 it would not have constituted income in that year, either. This argument is closely associated with another contention which relates to the fact that petitioner was required to deduct, being on the accrual basis, and did deduct, in the year 1933, all of the expenses for labor and materials which accrued in that year in his pursuance of his work under the contract and under the requirements of the State engineer. Both arguments take us back to very familiar ground, to wit, . At this late date petitioner, with great energy, undertakes to place new interpretations upon the rules and reasoning set forth in Sanford & Brooks Co. case. It causes petitioner great concern and evident anguish that our system of Federal taxation is such that each tax year is a separate unit, and that, in some instances, the taxpayer must deduct expenses in an early year and must surcharge his income correspondingly in a later *294 year, under such facts as we have here, all of which the court pointed out in , in which case, incidently, the taxpayer was on the accrual basis. The rationale of this is explained in Thus, as recently as July 31, 1934, the Circuit Court of Appeals for the Second Circuit, the Circuit Court which would have jurisdiction over petitioner's appeal from this decision, made it clear that the rule and rationale of the Sanford & Brooks Co. case applies equally whether a taxpayer keeps his books and makes his returns on the cash basis or on the accrual basis. In our opinion the Sanford & Brooks Co. case governs this proceeding although the precise issue here was not involved in that case. This conclusion is reached in spite of petitioner's great effort to convince that the rationale of the Sanford & Brooks Co. case has no applicability where the taxpayer is on the accrual basis. There is some evidence to indicate that the principal amount of the award of the Court of Claims, $41,736.01, included some allowance for *295 profit to petitioner, but for purposes of argument we are willing to proceed upon the theory that the above amount constituted no more than reimbursement to petitioner for actual costs of materials and labor furnished to the State of New York in the year 1933. It is now necessary to revert to some of the facts. Petitioner states that its total costs for labor and materials during the year 1933 amounted to $218,768.88, and that other allowable business deductions amounted to $16,953.23, total $235,722.11. These total amounts presumably included the amounts expended by petitioner in 1933 in order to earn all of the payments which might be due to him by the State of New York for the work in question, both for work under the contract and for the alleged extra work. During the year 1933 petitioner's gross receipts were $170,133.24, exclusive of the incorrect accrual of $65,000 in 1933. Thus, it is seen that petitioner sustained a loss in the year 1933 irrespective of whether he properly accrued $65,000 in that year in anticipation of receiving all or part of that amount. Including the $65,000 in income for 1933, petitioner's loss was $588.87; excluding that amount, petitioner's loss was *296 $65,588.87. It was pointed out in the Sanford & Brooks Co. case that "receipts from the conduct of a business enterprise are to be included in the taxpayer's return as a part of gross income, regardless of whether the particular transaction results in a net profit, * * *". Of course, petitioner's contention that the principal sum of $41,736.01 should not be included in gross income in the taxable year (or in any year), because it equaled, and in a loose sense was a return of expenditures made in performing a contract, is wrong. It is, in fact, wholly immaterial that the sum of $41,736.01, money received in a transaction entered into for profit, is equal to the expenditures made for the purpose of earning such sum. It is also immaterial that petitioner has used the deductions for expenses incurred in 1933 in computing his income tax liability for that year. The reimbursement to him for such expenditures, albeit the reimbursement was in the identical amount of the expenditures, did not accrue until a later year, the year 1938, and petitioner's income for 1938 must be increased correspondingly. Respondent's *297 determination is sustained. Decision will be entered for the respondent. Footnotes
1. Article 42-1. When included in gross income. - * * * If a person sues in one year on a pecuniary claim or for property, and money or property is recovered on a judgment therefor in a later year, income is realized in the later year, assuming that the money or property would have been income in the earlier year if then received.↩